Robert J. Gibson (#144974)
hgibson@swlaw.com
Daniel S. Rodman (#156156)
drodman@swlaw.com
Bobbie Eftekar (#240102)
beftekar@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
714.427.7000

Attorneys for Defendant
FORD MOTOR COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KATHLEEN MURPHY; and DANIELA VERELA,<br><br>Plaintiffs,<br><br>vs.<br><br>CONTINENTAL TIRE NORTH AMERICA, INC.; FORD MOTOR COMPANY; TRW AUTOMOTIVE; TRW, INC.; TRW VEHICLE SAFETY SYSTEMS, INC.; and DOES 1-20, inclusively,<br><br>Defendants. | CASE NO. CV09-03004 GHK (FMOx)<br><br>**DECLARATION OF DAVID WOTTON IN SUPPORT OF FORD MOTOR COMPANY'S STIPULATED PROTECTIVE ORDER**<br><br>DATE OF REMOVAL: April 29, 2009<br>TRIAL DATE: None |

## DECLARATION OF DAVID WOTTON

I, David Wotton, declare:

1. I am a Design Analysis Engineer for Defendant Ford Motor Company ("Ford"). I have personal knowledge of the facts set forth below, and if called as a witness I can competently testify to them. I submit this Declaration in support of Ford's Stipulated Protective Order, which is being filed concurrently herewith.

2. I received my Bachelor of Science degree in Mechanical Engineering from the University of Michigan in 1969, and my Master of Science degree in Mechanical Engineering from the University of Michigan in 1971.

3. I have been continuously employed by Ford since May of 1971. I and worked from 1971-1985 as an Engineer in various areas of Ford's Light Truck Engineering division. From 1985-2001, I worked as a Supervisor for various programs in Ford's Light Truck Engineering division, in the Light Truck Vehicle Center, and in the Premier Auto Group, Lincoln PD. I have been in my present position, Design Analysis Engineer, since April 2002 and I work out of the Design Analysis Department offices located at Ford Motor Company, 1 American Road 116-A6, Dearborn, Michigan 48126.

4. In this Affidavit, I discuss certain proprietary, trade secret, and confidential information of Ford. In executing this Affidavit, I do not intend to, and Ford has not authorized me to, waive any privileges Ford may have as to proprietary, trade secret, and/or confidential information, or as to attorney-client communications or information developed in anticipation of or in response to litigation.

5. In the various positions described above, I have become familiar with procedures and documents used by Ford in the design and manufacture of the Ford Explorer. As part of my job duties, I work with new program model teams in generating and testing new vehicle designs and reviewing and testing current vehicle designs. I also serve as a technical resource for Ford's Automotive Safety Office, collecting and interpreting technical documents and data. I have broad familiarity with the vehicles Ford has produced over the years and with the design history of those products. In addition, I am generally familiar with the sale and marketing of Ford's products. I am also familiar with the development of the Ford Explorer, with Ford's manufacturing processes and equipment, and with the efforts that Ford makes to protect its proprietary and trade secret information.

## The Subject Vehicle

6. Plaintiffs' Complaint filed in this case alleges that on or about April 6, 2007, Plaintiffs were injured in a rollover accident involving a 1997 Ford Explorer.

## The Confidentiality of Ford's Documents Must Be Maintained Due to the Highly Competitive Nature of the Industry

7. I am informed that Plaintiffs have served document requests and interrogatories which seek to discover information and documents relating to and/or describing information that Ford holds as confidential and proprietary, as described below. The confidential information involves: (1) future model year vehicles, designs, and design concepts; (2) cost, profit or other financial information; (3) National Highway Traffic Safety Administration FMVSS 216 proposed rulemakings; (4) technologically advanced engineering concepts, designs and testing; and (5) proprietary engineering methodologies, designs, and testing.

8. The information described above includes confidential, technical, proprietary and commercially sensitive information developed at great expense to Ford and would be extremely valuable to Ford's competitors. Hence, failure to protect this information from disclosure to unauthorized persons would result in irreparable harm to Ford.

9. The automotive industry is extremely competitive, and competitors are always seeking to gain any advantage they can, whether it is lead-time for the introduction of new products, or an understanding of the competition's design and manufacturing processes, goals and strategy. For example, conceptualizing, developing, testing and implementing new products and improving the durability or performance characteristics of products requires a substantial commitment of time and personnel and an enormous financial and technological investment. The process can require years of effort. Any advantage, whether it is gaining in lead time for the introduction of new products, or whether it is an understanding of the

11880882.1                               -3-                      Case No. CV09-03004 GHK (FMOx)
DECLARATION OF DAVID WOTTON IN SUPPORT OF FORD'S STIPULATED PROTECTIVE ORDER

design and manufacturing process, goals and strategy of Ford could lead to significant gains by competitors.

10. The specific competitive harm and/or prejudice that Ford will suffer if its confidential, technical, proprietary and commercially sensitive information is not protected is outlined below:

(a) <u>Future Model Year Vehicles, Designs, and Design Concepts</u>: Ford would suffer competitive harm if documents and materials reflecting designs and design concepts applicable to future model year vehicles or technologies were disseminated to the public and/or to Ford's competitors. Ford would suffer competitive harm because a competitor could utilize the research underlying Ford's design concepts by: (1) applying such research to the competitor's own potential design concepts (whether in comparison or contrast), thereby undercutting the time the competitor would have spent, and the cost the competitor would have incurred, in developing the technology or design concept, and (2) developing marketing strategies that would contrast the competitor's own design concepts with Ford's based upon this information.

(b) <u>Cost, Profit or Other Financial Information</u>: Ford would suffer competitive harm and prejudice if its confidential and proprietary cost, profit or other financial information was disseminated in the marketplace. The automotive industry is highly competitive. If Ford's competitors and suppliers had possession of Ford's cost, profit and other financial information, they could use such information to unjustly and improperly improve their position in the marketplace and harm Ford's by undercutting Ford's revenues, profits, costs, timetables, and by damaging Ford's future bargaining power. Further, public dissemination of Ford's confidential financial information could fundamentally alter and harm Ford's position in the marketplace.

(c) <u>National Highway Traffic Safety Administration (NHTSA) Proposed FMVSS 216 Rulemakings</u>: Ford would suffer competitive harm if its confidential

communications with NHTSA regarding proposed FMVSS 216 rulemaking were disseminated in the marketplace. Ford's communications with NHTSA in this regard contain information pertaining to potential designs and design concepts for future Ford vehicles, the dissemination of which would cause Ford competitive and/or irreparable harm. Further, this information has been afforded confidential treatment by both NHTSA and Ford as provided in 49 CFR Part 512.

(d) <u>Technologically Advanced Engineering Concepts, Designs and Testing</u>: Ford would suffer competitive harm if its confidential and proprietary technologically advanced engineering concepts, designs and testing were disseminated in the marketplace. The automotive industry is highly competitive, and being first to the market with a new concept or new features can confer a distinct competitive advantage to an automotive manufacturer, translatable into sales and profits. Accordingly, Ford's competitors could use Ford's technologically advanced engineering concepts and designs to design and/or develop the same or similar concepts and designs sooner than they otherwise would have and/or at a lower cost, since Ford's competitor would not have incurred the substantial time, research, testing, and developmental costs that Ford had incurred. This would allow a competitor to get a product to market sooner with an advanced concept that the product may not otherwise feature, at Ford's expense and to Ford's detriment in the marketplace.

(e) <u>Proprietary Engineering Methodologies, Designs and Testing</u>: Ford would suffer competitive harm if documents and materials reflecting its proprietary engineering methodologies, designs and tests were disseminated in the marketplace. Ford's competitors could use Ford's proprietary engineering methodologies, designs and test data in the development of their own designs with significantly less effort than Ford and with significantly less costs incurred, and thus would be able to get a product to market sooner than they would have otherwise and/or would be able to get their product to market at a lower cost, since they would not have incurred the

substantial research, testing, and developmental costs that Ford had incurred. Further, if Ford's proprietary engineering methodologies, designs and test data were disseminated to a competitor without protection, an original equipment manufacturer or an aftermarket part or product manufacturer could improperly produce a pirated replica of Ford's proprietary design for sale and use in the marketplace.

I, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this **2Y** day of August, 2010 at **DEARBORN**, **MI**.

(signature)

_David R. Wotton_

(name)

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California 92626.

On August 30, 2010 I served, in the manner indicated below, the foregoing document described as:

**DECLARATION OF DAVID WOTTON IN SUPPORT OF FORD MOTOR COMPANY'S STIPULATED PROTECTIVE ORDER**

on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa addressed as follows:

| | |
|---|---|
| **PLAINTIFF COUNSEL** | Fabrice N. Vincent, Esquire<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, California 94111.3339<br>415.956.1000<br>415.956.1008, fax<br>fvincent@lchb.com |
| **PLAINTIFF COUNSEL** | C. Tab Turner, Esquire<br>TURNER & ASSOCIATES PA<br>4705 Somers Avenue, Suite 100<br>North Little Rock, Arkansas 72116<br>501.791.2277<br>501.791.1251, fax<br>tab@tturner.com |
| **DEFENDANT COUNSEL**<br><br>**CONTINENTAL TIRE NORTH AMERICA, INC.** | Walter M. Yoka, Esquire<br>YOKA & SMITH LLP<br>777 South Figueroa Street, Suite 4200<br>Los Angeles, California 90017<br>213.427.2300<br>213.427.2330, fax<br>wyoka@yokasmith.com |

11880882.1     -6-     Case No. CV09-03004 GHK (FMOx)

DECLARATION OF DAVID WOTTON IN SUPPORT OF FORD'S STIPULATED PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | **DEFENDANT COUNSEL** | George A. Pisano, Esquire |
| 2 | **TRW VEHICLE SAFETY SYSTEMS, INC.** | WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP |
| 3 | | 555 South Flower Street, Suite 2900 |
| 4 | | Los Angeles, California 90071.2407 |
| | | 213.443.5100 |
| 5 | | 213.443.5101, fax |
| 6 | | George.pisano@wilsonelser.com |
| | **DEFENDANT COUNSEL** | David B. Weinstein, Esquire (*pro hac*) |
| 7 | | Katheryne MarDock, Esquire (*pro hac*) |
| | **TRW VEHICLE SAFETY SYSTEMS, INC.** | WEINSTEIN TIPPETTS & LITTLE LP |
| 8 | | 7660 Woodway, Suite 500 |
| 9 | | Houston, Texas 77063 |
| 10 | | 713.244.0800 |
| | | 713.244.0801, fax |
| 11 | | David.weinstein@wtllaw.com |
| 12 | | Katheryne.mardock@wtllaw.com |

13   x    BY E-FILING (USDC Central): I caused such document to be sent electronically to the court; pursuant to General Order No. 08-02, electronic filing constitutes service upon the parties who have consented to electronic service.

15   x    FEDERAL: I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

17   EXECUTED on August 30, 2010, at Costa Mesa, California.

//s//Louise Mishler
Louise Mishler

11880882.1   -7-   Case No. CV09-03004 GHK (FMOx)

DECLARATION OF DAVID WOTTON IN SUPPORT OF FORD'S STIPULATED PROTECTIVE ORDER